## MATTHEW C. PRATT & another *vs.* GEORGE W. CHASE.

### Middlesex.    January 9. — March 7, 1877.

In an action against an indorser of a promissory note, the defendant testified that he said to the plaintiff's agent that he doubted if the maker would pay the note; that he would like to arrange it by giving a new note, making himself promisor; if he would make a new note, he would sign it; if he would send up the old note, he would waive demand and notice upon the back of it; and, on cross-examination, he testified that he did not want to have the note protested; that he wanted to save the expense of demand and notice, and thought if the note was protested he would have to pay it immediately, and that was the reason why he offered to give a new note. *Held,* that a ruling that, as matter of law, on this evidence, the defendant waived demand and notice, was incorrect.

In an action against an indorser on a promissory note, it appeared that the holder of the note proved a claim in bankruptcy against the maker, and accepted a composition entered into by him with his creditors and approved by the District Court of the United States, under the U. S. St. of June 22, 1874, § 17; but did not prove the note in suit against the estate of the maker, nor was it included in the statement made by the maker to his creditors. *Held,* that the defendant was not discharged as indorser.

CONTRACT upon a promissory note, made by Melvin E. Dam, payable to the order of the defendant, and indorsed by him to the plaintiffs. Answer: 1st. A denial of due demand and notice.    2d. A composition under the U. S. St. of June 22, 1874, § 17.

At the trial in the Superior Court, before *Colburn,* J., it appeared that the plaintiffs indorsed the note to the Wamesit Bank, who held the same until after maturity.

The defendant testified that on the second day of grace he sent for the plaintiffs to come and see him, and they sent their

clerk, Kimball; that he told Kimball that Dam, the maker, had had some trouble, and he doubted if he would pay the note; that he, Chase, would like to arrange it by giving a new note, making himself promisor; if he would make a new note, he would sign it; if he would send up the old note, he would waive demand and notice on the back of it. Kimball communicated this to the plaintiffs. On cross-examination, the defendant further said that he did not want to have the note protested; that he did not believe Dam would pay it; that he wanted to save the expense of demand and notice, and thought if the note was protested he would have to pay it immediately; and that was the reason why he offered to give a new note. One of the plaintiffs testified, " I accepted no offer made by the defendant to Kimball." It did not appear that Kimball was sent to see the defendant at the suggestion of the then holder of the note, or that the plaintiffs, or Kimball, were in any way acting as agents for the then holder, or that the holder was ever cognizant of the conversation between the defendant and Kimball.

On the last day of grace, Knowlton, the holder of the note, gave it to a notary public, and told him to take it to the plaintiffs and ask them if they wanted it protested. By direction of the plaintiffs, on the same day, at about $4\frac{1}{2}$ o'clock, P. M., a demand was duly made at the residence of the maker, who could not be found, and had no place of business; the note was not paid, and then the notary undertook to send a notice of non-payment to the defendant, but, for the purposes of this trial, it was admitted that said notice was defective. On the evening of the same day, the plaintiffs received from the holder due notice :f the demand and of the dishonor of the note, and on the next day paid the bank and took up the note. The plaintiffs relied on a waiver of demand and notice on the part of the defendant.

It also appeared in evidence that, after the maturity of the note, Dam was adjudicated a bankrupt in the District Court of the United States for the District of Massachusetts; that subsequently Dam made an offer of composition with his creditors, under the U. S. St. of June 22, 1874, § 17, agreeing to pay fifteen per cent. on their respective claims in full satisfaction, which was accepted by the plaintiffs, and that the District Court confirmed this resolution of composition, and ordered it to be recorded.

It was admitted that the plaintiffs never proved the note in suit against the estate of the bankrupt, the claim proved by them being a different claim. The proceedings in bankruptcy were commenced after the suing out of the plaintiffs' writ; and at the time the composition was signed, and when the same was confirmed and ordered to be recorded, the plaintiffs were the holders of the note in suit.

The defendant contended that the composition and the proceedings thereon discharged and released him as indorser of the note in suit, and were a bar to this action, and asked the judge to rule that "if, before the maturity of the note, the defendant made an agreement with the plaintiffs, waiving demand and notice, or from which a waiver might be inferred, such agreement would not be binding, unless the plaintiffs were at that time holders of the note, or unless they were the holders at maturity."

The judge declined so to rule, but did rule that the composition proceedings were no defence to this action; that, as matter of law, the conversation between the defendant and the witness Kimball, the agent of the plaintiffs, was a waiver of demand and notice; and directed the jury to return a verdict for the plaintiffs. The defendant alleged exceptions.

*W. H. Bent*, for the defendant.

*D. S. Richardson & G. F. Richardson*, *(J. W. Reed* with them,) for the plaintiffs.

DEVENS, J. Although the plaintiffs did not actually hold the note in suit at the time of the occurrence of the facts and conversation which it is contended constitute a waiver by the defendant of demand upon the maker and notice of non-payment, yet they may avail themselves of such waiver even if it was not communicated to the holder. The plaintiffs were subsequent indorsers of the note, responsible upon it to the indorsee, to whom they had transferred it for value. If they themselves were satisfied to waive demand and notice, they might well neglect to see that such demand was made and notice given by the indorsee for the purpose of charging the first indorser, if they were informed distinctly that he waived it.

The difficulty is, that the conversation testified to by the **defendant** does not clearly show that he waived demand and no-

tice. He said to the plaintiffs' agent "he would like to arrange it by giving a new note, making himself promisor; if he would make a new note, he would sign it; if he would send up the old note, he would waive demand and notice on the back of it;" and, on cross-examination, he testified "that he wanted to save the expense of demand and notice, and thought if the note was protested he would have to pay it immediately; and that was the reason why he offered to give a new note." It is not to be inferred from this, as matter of law, that he absolutely waived temand and notice; its meaning may be that he was ready to do so if he was permitted to give a new note, on which he contemplated that there would be some delay. As a waiver is in derogation of the admitted rights of the indorser, it cannot legally be inferred from doubtful or equivocal acts or circumstances which are capable of a different interpretation. The conversation with the defendant presented, at most, a question of fact for the jury whether an absolute waiver was made by the defendant or one conditional only. If it was the latter, it was not in legal effect a waiver. Upon this question the exceptions must be sustained.

It is necessary to determine whether the judge correctly ruled that the proceedings as to the composition under the bankrupt law did not discharge the indorser.

A discharge in bankruptcy of the maker of a promissory note does not release the indorser. U. S. Rev. Sts. § 5118. But the defendant contends that this case does not come within either the letter or the principle of the ordinary discharge, and that it is to be deemed a voluntary release, granted by the holder to the maker, without any reservation of remedies against other parties, to which the indorser was not a party, and that he is therefore discharged. *Commercial Bank* v. *Cunningham*, 24 Pick. 270, 275. *Sohier* v. *Loring*, 6 Cush. 537.

By the U. S. St. of June 22, 1874, it is provided that, when any bankruptcy proceedings are pending, a certain proportion of the creditors in number and value may, at a meeting called for that purpose, resolve that a composition proposed by the debtor shall be accepted in satisfaction of the debts from the debtor to them. This resolution is to be confirmed by the signatures of the debtor and of a certain other specified proportion in number

and value of the creditors, and at the meeting the debtor is to present a statement of the whole of his assets and debts, with the names and addresses of his creditors, and to answer any inquiries that may be addressed to him. Such resolution is to be presented to the bankruptcy court, and upon notice, and upon being satisfied that it is for the best interests of all, the court may order it to be recorded and the statement of debts and assets filed. Until such record and filing, it has no validity. The provisions of such a composition are binding upon all the creditors whose names, addresses and the amount of the debts due to whom are shown at the meeting at which such resolution shall have been passed, but do not affect or prejudice the rights of any other creditor.

A discharge in bankruptcy is a bar to all claims which are provable under the proceedings except fiduciary debts or those created by fraud, embezzlement or defalcation as a public officer. U. S. Rev. Sts. § 5117. The proceedings under a composition operate only upon those creditors whose names, addresses and debts are borne upon the statement, except in the case of negotiable paper, where the holder must often be unknown, and where, if such is the case, a particular description is sufficient to include such paper within the composition. No discharge is granted to the debtor under the resolution, but by its performance the debts included are satisfied. *In re Becket*, 2 Woods, 173.

The debt here sued was not proved in bankruptcy, and was not included by any mention of it upon the debtor's statement. It was in the power, either of the bankrupt or of the creditor, to have had it enumerated, and neither saw fit to do so. The creditor did not become entitled to the dividend provided for by the composition upon this debt, nor was the debt satisfied. The fact that the creditor proved another and distinct debt and thereon assented to the proposed composition, does not affect this. Until it was embraced in the statement, it could not be acted upon or reckoned in determining whether creditors holding the requisite amount in value of the debts had assented to the resolution.

Whether, if the note sued had been proved against the maker's estate or included in his statement, and the holder had assented to the composition, such assent would, upon compliance

with its terms, have operated as a voluntary release or discharge of the maker, is a question not presented.*

Upon the facts as they appeared before him, the learned judge correctly ruled that the composition proceedings did not constitute a satisfaction of this debt. But upon the ruling heretofore considered, as to the waiver of demand and notice, the

*Exceptions are sustained*

---

* See *Guild* v. *Butler, post,* 498.